BRYANT, Judge.
C.C.M. appeals orders dated 3 June 2003 adjudicating him delinquent and imposing a term of probation.
On 6 March 2003, 15-year-old C.C.M. and two other boys were students at Wake Forest Rolesville Middle School. That morning, in-school suspension (ISS) teacher Mr. Walter reported to Assistant Principal Johnny Owens (Owens) that C.C.M. and two other boys were skipping class. Walter remembered C.C.M. because he should have reported to ISS that day and failed to do so. Both Walter and Owens went to search for the three boys and located them on the second floor hallway. The boys were escorted to Owens' office.
Owens telephoned each of the boys' parents to inform them of the incident and also of the corresponding punishment. Owensinformed C.C.M.'s mother that because her son had skipped ISS, his punishment would be different from the other two boys. On realizing that he was going to be given out-of-school suspension, C.C.M. "became angry, very angry, [and] started shouting using some profanities." C.C.M. continued to shout when leaving Owens' office.
Officer P. Simmons, the Wake County Sheriff's Department deputy assigned as a school resource officer (SRO), attempted to talk to C.C.M., but C.C.M. "was really disrespectful to Officer Simmons." Owens came out of his office to inform C.C.M. that his behavior toward Officer Simmons was unacceptable, but C.C.M. continued "talking to Officer Simmons being disrespectful." Again, C.C.M. was very angry and using profanity. When Officer Simmons attempted to calm C.C.M. down, telling him it was not worth getting this upset, C.C.M. said "something to the effect he didn't have to listen to anybody there and he continued using profanities" and would not calm down.
Owens telephoned C.C.M.'s mother a second time to inform her that it would be better if she came to pick up C.C.M. immediately before he got into more trouble. While Owens was on the telephone with C.C.M.'s mother, C.C.M. continued talking to Officer Simmons in a disrespectful manner. C.C.M.'s mother asked to speak to her son on the telephone, which he did. While talking to his mother, C.C.M. suddenly threw the telephone down on to a desk and thereafter began walking out of the office.
Officer Simmons instructed C.C.M. to sit down; however, hecontinued walking toward the door. C.C.M. then "tried to push through [Officer Simmons] to go out the door as [she] was instructing him to sit down in a chair." A brief struggle ensued before Officer Simmons was finally able to subdue C.C.M.
Officer Simmons filed juvenile petitions alleging C.C.M. was a delinquent juvenile in that he violated N.C. Gen. Stat. § 14-223 (resisting, delaying or obstructing an officer) and N.C. Gen. Stat. § 14-288.4(a)(6) (disorderly conduct). These matters came for hearing at the 3 June 2003 juvenile session of Wake County District Court with the Honorable Michael R. Morgan presiding. By orders dated 3 June 2003, C.C.M. was adjudicated delinquent for violating N.C. Gen. Stat. §§ 14-223 and -288.4(a)(6), and placed on probation. C.C.M. filed notice of appeal on 9 June 2003.
The issues on appeal are whether the juvenile court erred in failing to: (I) grant C.C.M.'s motion to dismiss the charge of disorderly conduct; and (II) dismiss the charge of resisting, delaying or obstructing an officer.
I
C.C.M. first argues that the juvenile court erred in failing to grant his motion to dismiss the charge of disorderly conduct.
To withstand a motion to dismiss charges contained in a juvenile petition, there must exist substantial evidence of each material element of the offense charged. In re Bass, 77 N.C. App. 110, 115, 334 S.E.2d 779, 782 (1985). The evidence must be considered in the light most favorable to the State, and the Stateis entitled to receive every reasonable inference of fact that may be drawn from the evidence. Id.
N.C. Gen. Stat. § 14-288.4(a)(6) defines disorderly conduct as a public disturbance intentionally caused by any person who:
. . . .
(6) Disrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto.
N.C.G.S. § 14-288.4(a)(6) (2003). The conduct proscribed pursuant to N.C. Gen. Stat. § 14-288.4(a)(6) must cause "a substantial interference with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled." State v. Wiggins, 272 N.C. 147, 154, 158 S.E.2d 37, 42 (1967); see also In re Eller, 331 N.C. 714, 417 S.E.2d 479 (1992).
In the instant case, both the assistant principal and the ISS teacher had to stop performing their assigned duties to look for C.C.M. once it was reported that he was skipping class. After C.C.M. was located on the second floor hallway, escorted to the assistant principal's office, and informed of his punishment, he became angry and began shouting profanities. The assistant principal testified that the shouting was disruptive not only to the school but also to those in the office. The assistant principal telephoned C.C.M.'s mother first to report the "skipping of class" incident, and then a second time to request sheimmediately pick up C.C.M. While talking on the telephone to his mother, C.C.M. suddenly slammed the phone on the assistant principal's desk, refused to sit down when instructed by the SRO, talked disrespectfully to the SRO, and attempted to push the SRO out of the way in order to leave the office. Despite this evidence C.C.M. contends his level of interference was not adequately substantial to sustain a conviction.
In reviewing the case of In re Pineault, 152 N.C. App. 196, 566 S.E.2d 854 (2002), our Court dealt with the issue of what level of interference would constitute "substantial interference" as contemplated in Wiggins. In Pineault, the juvenile, a 13-year-old student in middle school, was charged as a delinquent juvenile based on incidents where he used profanity toward a teacher and another student, and kicked a door while being taken into the school principal's office. This Court concluded that given the severity and nature of the juvenile's language, coupled with the fact that a teacher was required to stop teaching her class for at least several minutes, the juvenile's actions substantially interfered with the operation of a classroom.
Our Court also re-examined the issue of "substantial interference" in the case of In re M.G., 156 N.C. App. 414, 576 S.E.2d 398 (2003). In M.G., the juvenile, who was 14 years of age at the time of the hearing, was adjudicated delinquent pursuant to of N.C. Gen. Stat. § 14-288.4(a)(6) for yelling a profanity at a group of students in a hallway. The teacher who reported the incident left his assigned position on lunch duty in the cafeteriato escort the juvenile to the school detention center, and reported the incident to the school's dean and SRO before returning to his lunch duty. On appeal, the juvenile argued the juvenile court erred by failing to dismiss the disorderly conduct charge. Our Court concluded that the evidence, viewed in the light most favorable to the State, was sufficient to establish that the juvenile's conduct substantially interfered with the operation of the school. In reaching this holding, the Court noted the evidence indicated that the reporting teacher was away from his assigned duties for at least several minutes, which was evidence sufficient to show substantial interference with school operations.
In light of Pineault and M.G. and given C.C.M.'s use of profanity, coupled with the fact that both the assistant principal and the ISS teacher were required to stop performing their duties to look for C.C.M., as well as the SRO who had to physically subdue him, there existed sufficient evidence to establish that C.C.M.'s conduct substantially interfered with the operation of the school. This assignment of error is overruled.
II
Next, C.C.M. argues that the juvenile court erred in failing to dismiss the charge of resisting, delaying or obstructing an officer.
North Carolina Rules of Appellate Procedure, Rule 10(b)(3), provides that an offender who fails to move to dismiss an action at the close of all of the evidence may not challenge on appeal the sufficiency of the evidence to prove the crime charged. N.C.R.App. P. 10(b)(3). The transcript reveals that C.C.M. only presented a motion to dismiss the charge of disorderly conduct, not resisting, delaying or obstructing an officer. C.C.M. has therefore waived his right to challenge the sufficiency of the evidence on appeal. See In re Clapp, 137 N.C. App. 14, 19, 526 S.E.2d 689, 693 (2000); In re Davis, 126 N.C. App. 64, 66, 483 S.E.2d 440, 441-42 (1997).
Affirmed.
Judges ELMORE and GEER concur.
Report per Rule 30(e).